(33 App. Div. 311.)

HEILBRONN et al. v. HERZOG.

(Supreme Court, Appellate Division, First Department. October 7, 1898.)

1. SALES—RESCISSION BY SELLER—WAIVER.
    Plaintiff, relying on defendant's statement to a commercial agency as to his ownership of property, sold him goods on credit, taking notes for the price. Learning that the statements were incorrect, he called on defendant, who admitted that the statement was a mistake; and plaintiff expressed himself as satisfied, and did not demand the goods or the price, or offer to return the notes. *Held*, that he thereby waived the right to rescind.

2. APPEAL—RECORD—REVIEW.
    The exclusion of testimony cannot be reviewed where the record fails to show the nature or materiality of the testimony.
    O'Brien, J., dissenting.

Appeal from trial term, New York county.

Action by Justus Heilbronn and another against Abraham S. Herzog. Judgment was for defendant, and a new trial was denied, and plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, O'BRIEN, and McLAUGHLIN, JJ.

B. N. Cardozo, for appellants.

Julius J. Frank, for respondent.

RUMSEY, J. The action was brought in form to recover the purchase price of a quantity of diamonds which the plaintiffs sold to the defendant on the 6th day of August, 1896. The complaint alleged a sale for a price presently to be paid, and demanded judgment for the amount of the purchase price. The answer denied that anything was due at the time of the commencement of the action, and alleged that the goods were sold by the plaintiffs to the defendant on credit, and that the term of the credit had not expired; but it did not deny the sale of the diamonds for the price claimed in the complaint. Upon the trial, the defendant assumed the affirmative, and proved that at the time of the sale he gave three notes for the purchase price, running, respectively, for 6, 12, and 18 months, and that the first of the notes was not due at the time when the action was begun. The plaintiffs proved that at the time of the sale they took steps to ascertain the credit and responsibility of the defendant, and produced a statement that he had made to a commercial agency in the city of New York, in which, among other things, he stated that he was the owner of real estate valued at $12,000, and it appeared that the plaintiffs relied upon this statement in giving the defendant credit for the diamonds. It appeared further, and was not disputed, that the defendant, at the time of making this statement, was not the owner of any real estate at all, but that it belonged to his wife. There was some slight evidence in addition, tending to show that the statement was knowingly made by the defendant. The defendant testified that, while he signed the statement, he signed it without paying any attention to it; that it was made by his son; and that he supposed that it was correct, although he did not read it. It was conceded that, as soon as his attention was called to the fact that the statement contained what it did about the real estate, he had it corrected, saying at once that it was a mistake, and that he had not intended to insert that item in a statement of his assets. This was substantially the testimony bearing upon the question of fraud, and it is quite clear that there was grave question, to say the least, whether the defendant had been guilty of any fraud in making the statement upon which the plaintiff Heilbronn swore that he relied when he sold the diamonds. The plaintiff Heilbronn testified that, as soon as he learned of the fact that defendant had no real estate, he called upon him in regard to the matter, and Herzog told him at once that he never had owned the real estate; that the statement was a mistake, but that he was just as good without the property as with it. Heilbronn further testified that after that conversation he went away

satisfied. He does not claim that at that time he made any objection to the credit, or announced his intention of rescinding it. This conversation was on the 2d or 3d day of September. Herzog testified that on that day Mr. Heilbronn come to his office, spoke to him about the item of the real estate which appeared in the statement, and that Herzog told him that he never had owned it; that it belonged to his wife; that it was in there by mistake, and he had not noticed it. Herzog then testified that he went to the safe, took out the package of diamonds, which had not yet been opened, and said: "Mr. Heilbronn, if you have any doubt of my honesty, here are your diamonds. Give me back my notes. I do not want any business transactions with you." He testified that Heilbronn in reply to that said: "Herzog, I have known you for many years, your family and your brothers. It is all right. I simply wanted to ask you what this change meant." Herzog testified that at that time he had in his possession, and offered to Heilbronn, the diamonds intact. There was no claim that the diamonds had depreciated in value in any way, or that their market value was any less than it was at the time the sale was made; and it is quite clear upon the evidence that each party, by a rescission of the contract at that time, would have been put precisely in the same position as he was before the sale was made. Heilbronn denies that the diamonds were offered to him, but he admits that he told Herzog at that time that he was satisfied with his explanation, and he does not claim that he made any effort to rescind the sale or demanded the price of the diamonds then or at any other time before this action was begun.

The learned trial judge charged the jury substantially that if the conversation took place between Heilbronn and Herzog as testified to by Herzog, and Heilbronn at that time expressed himself as satisfied, and did not claim to rescind any part of the contract, as a matter of law it was a waiver of his right to do so, and the plaintiffs could not recover. This instruction is claimed by the appellants to be erroneous. I cannot agree with the opinion of Mr. Justice O'BRIEN that this claim of the appellants is well founded. There is no doubt, to be sure, that after a sale made for credit, as this was, the seller may, if he discovers that a fraud has been practiced upon him to procure a credit, rescind that part of the contract, and proceed at once to sue for the purchase price of his goods, as though the sale were made for cash. Wigand v. Sichel, *42 N. Y. 122. But the right to rescind only arises out of the fraud. If the seller was induced to give the credit by a mere mistake of the facts, and desired to rescind the contract because he had entered into it under a mistake, he must rescind the whole contract. He is entitled to rescind a portion of it when the purchaser had been guilty of a fraud, and not otherwise. This contract was made on the 6th day of August, 1896. The first note fell due in six months, or on the 6th day of February, 1897. This mistake which the plaintiffs claim to be a fraud was discovered before the 3d of September, 1896. The attention of the purchaser was called to it on that day, and the seller heard the explanation which the purchaser gave about it. Confessedly, the contract was not then rescinded; but, on the contrary, it is conceded by Mr. Heilbronn that he went

away without rescinding it, expressing himself as satisfied. He retained the notes, not only until this action was begun, which was in December, 1896, but until the trial. He never demanded the purchase price, except so far as this action may be claimed to be a demand; and down to the very day of the trial, so far as he was concerned, the defendant stood in precisely the same situation towards him as he had after the notes were first given, the diamonds being in the defendant's possession, and the notes being outstanding somewhere under the control of the plaintiffs, if they had not disposed of them.

If there is any rule well settled in the law, it is that a person who claims to have been defrauded upon entering into a contract is bound to rescind the contract promptly upon the discovery of the fraud, and before rescinding it, or, at the time of rescinding it, to return whatever he has received under it. If he has been defrauded, he may reject the contract, and refuse to be bound by it; but he must make his election when the facts come to his knowledge, and, if he then fails to rescind, he is bound, and he cannot afterwards refuse to perform. Baird v. Mayor, etc., 96 N. Y. 567, 598; Weston v. City of Syracuse, 82 Hun, 67, 72, 31 N. Y. Supp. 186. The rule has been laid down that, if the party defrauded would disaffirm the contract, he must do so at the earliest practicable moment after the discovery of the cheat. That is the time to make his election, and it must be done promptly and unreservedly. He must not hesitate. The election is with him. He may affirm or disaffirm the contract, but he cannot do both; and, if he concludes to abide by it as upon the whole advantageous to him, he shall not afterwards be permitted to question its validity. Masson v. Bovet, 1 Denio, 73. This is undoubtedly the rule where one party desires to rescind the whole contract on account of fraud. It is much more necessary to apply that rule strictly in a case where the party considering that the sale is advantageous still insists upon rescinding that part of it which is of advantage to the other party, and affirm only that part which is advantageous to himself. In such a case as that, clearly the person who claims to have been cheated is bound to take his position upon his portion of the broken contract, and insist that that part of it should be performed, and the rest shall be abandoned. In this particular case there was every reason of good faith why the plaintiffs should have advised the defendant of their intention to no longer be bound by the terms of the credit. They had his notes upon which his liability continued to exist. He had no means of ascertaining whether those notes had been transferred to other parties, or were still held by the plaintiffs. So far as he was concerned, he was bound by the contract, and must provide for payment of the notes, especially after Heilbronn announced to him that he was satisfied to let the contract stand. It would work a grave injustice in my opinion, and put a premium upon unfair dealing, if a man were permitted, when he was brought face to face with a condition like this, to play fast and loose with his duty to rescind. It seems to me that the learned judge was right when he said substantially that the plaintiffs, having the situation explained to

them, were bound to take a position and disaffirm the contract, or, as a matter of law, they had waived the right to do so.

I have examined the rulings with regard to evidence, and none of them seem to be material or require examination, except the evidence of the statement made to the Jewellers Mercantile Agency. The plaintiffs put upon the stand a witness who testified that Herzog made a statement to him of which he made a memorandum. The memorandum was produced and identified, and the witness was then asked what the defendant said to him about being the owner of the real estate, to which an objection was taken, and it was excluded. There is nothing in the case to show that the statement, had it been produced, would have been of any materiality on this trial. The memorandum is not presented, nor is there any offer made to show what the nature of the statement was. There can be no presumption in such a case that the ruling was erroneous, and there can be no inference from anything not in the case that any statement of the defendant that the witness was asked about would have been material in the slightest degree. For that reason, it does not appear that there was any error in the ruling.

Upon a full consideration of the case, it seems to me that no error was committed upon the trial, and the judgment and order should be affirmed. All concur, except O'BRIEN, J., dissenting.

Judgment and order affirmed, with costs.

O'BRIEN, J. (dissenting). The action was brought to recover for goods sold and delivered. The answer is that the goods, consisting of diamonds, were sold on credit, and that the credit had not expired. The plaintiffs sought to justify the anticipation of the credit by proof that the defendant had made false and fraudulent representations as to the value of his assets. There is no dispute as to the sale, delivery, or price of the goods. It appears that a statement had been furnished by the defendant to a commercial agency, which statement was signed by the defendant, representing that he was the owner of real estate of the value of $28,000, incumbered by a mortgage of $16,000, which left him an equity, therefore, of $12,000. That this statement was false is not denied. The defendant, however, claimed that it was inadvertently signed by him; that it was made by his son; and that, when his attention was called to it by a reporter of Bradstreet's, the defendant admitted that he did not own the property. This was communicated to the plaintiffs, and one of them, Mr. Heilbronn, went to the defendant, and reproached him with having made a false statement of his assets; and the defendant admitted that the statement was not true, and made the same explanation that the mistake was inadvertent and unintentional. Thereupon, he says, he went to the safe, took out the diamonds, and offered to give them back to the plaintiffs. This latter statement is disputed by Heilbronn, who says that no such conversation occurred.

At the close of the testimony, the court left to the jury practically two questions: (1) Whether the plaintiffs had made the sale in reliance upon representations which were false, and known to be false;

and (2) whether the defendant had offered to return the diamonds, and the plaintiffs had refused to accept them. We think these questions were properly in the case; and, were it not for the error into which the trial judge fell in charging the jury upon the law, the verdict, upon the disputed facts, should not be disturbed. The trial judge held, however, and so charged the jury, in effect, that if the defendant, after the discovery of the falsity of the statement, offered to return the diamonds, and the plaintiffs refused to accept them, this, as a matter of law, was a waiver of the fraud, which barred the plaintiffs thereafter from rescinding the agreement for credit, and bringing an action for the recovery of the purchase price. In this, we think, the court failed to note the distinction between the right which the plaintiffs had to rescind the sale and their right to rescind the credit. The latter is what the plaintiffs did, and they thereupon had a right to bring an action for the purchase price; and, upon proof that the goods were sold upon a credit by false representations, they were entitled, without accepting back the property, to recover the purchase price.

In Wigand v. Sichel, *42 N. Y. 122, it is said:

"It is not accurate to say that the plaintiffs sought to avoid the contract of sale. It is the credit only that is sought to be avoided. It was a sale of goods which the plaintiffs by their action affirmed. It was, however, a sale where the credit was obtained by fraud, and, in law, amounted to a sale for cash. In stating it in their complaint, therefore, to be a sale, and for cash, the plaintiffs but stated the contract according to its legal effect. They did not seek to avoid the contract of sale. They endeavored merely, by proof of the act of fraud, to reduce the transaction to a cash sale."

See, also, McGoldrick v. Willits, 52 N. Y. 620; Crossman v. Rubber Co., 127 N. Y. 38, 27 N. E. 400.

It will thus be seen that, upon the authorities, the right which the plaintiffs had on discovering the falsity of the statement was to disaffirm the sale, and take back the goods; or they could affirm the sale, and cancel the credit. When, therefore, the defendant offered to return the diamonds, and the plaintiffs refused to receive them, this was undoubtedly an affirmance of the sale; but there was nothing in the case which, as matter of law, showed that they had waived their right to allow the sale to stand, and to sue for the purchase price. If, instead of offering to return the diamonds, the defendant had tendered the purchase price, and this had been refused, it could have been construed into an affirmation of the credit. The offer made, however, was not of cash, but of the goods; and the unwillingness to accept them cannot be taken, as a matter of law, as an election on the part of the plaintiffs to waive the right to recover the money. Undoubtedly, the plaintiffs could have affirmed both the sale and the credit; but the case was not presented to the jury upon any such theory, the position taken by the court in its charge being that if the defendant explained that there was a mistake, and offered to return the diamonds upon the receipt of his notes, and the plaintiffs refused to receive them, "it was a waiver of the fraud, and the plaintiffs cannot recover. The plaintiffs were required to rely upon the promissory notes which they had taken when this sale was made, if at that time the fraud was waived."

Without discussing the other questions presented, we think that, for the error into which the court thus inadvertently fell, the judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the event.