HEILBRONN et al. v. HERZOG.

(Supreme Court, Appellate Division, First Department. June 6, 1902.)

1. SALES—FALSE REPRESENTATIONS—DISCOVERY OF FRAUD—DISAFFIRMANCE—QUESTION FOR JURY.

Plaintiff, relying on defendant's statement to a mercantile agency, sold him goods on credit, taking notes for the price. Subsequently defendant admitted that the statement was false, but plaintiff refused defendant's offer to return the goods on receipt of his notes. Over three months after the discovery of the falsity of the statement, and prior to the expiration of the credit period, plaintiff sued for the price. *Held*, that it was error to exclude evidence offered to excuse the delay, it not being conclusive of an affirmance of the credit.

2. SAME—QUESTION FOR JURY.

If the evidence excluded was sufficient to show an excuse, the question of an affirmance of the credit was for the jury.

Patterson, J., dissenting.

Appeal from trial term, New York county.

Action by Justus Heilbronn and another against Abraham S. Herzog. From a judgment dismissing the complaint, plaintiffs appeal. Reversed.

Argued before HATCH, McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Benjamin N. Cardozo, for appellants.

Julius J. Frank, for respondent.

INGRAHAM, J.  The action was for goods sold and delivered. The answer, admitting the allegations of the complaint, alleges that the goods were sold and delivered by the plaintiffs to the defendant upon credit, and that the period of such credit had not, at the commencement of this action, expired.  Upon the first trial of this action the defendant had a verdict, which was affirmed by this court (33 App. Div. 311, 53 N. Y. Supp. 841), but upon appeal to the court of appeals was reversed, and a new trial ordered (165 N. Y. 98, 58 N. E. 759).  The rule of law applicable, as stated by the court of appeals, is that:

"If the goods were sold and the credit extended to the defendant in reliance upon the false and fraudulent statements made by him, the plaintiffs had the right either to disaffirm the sale, and proceed in replevin to recover their goods, or they could waive the tort, and proceed in assumpsit for the purchase price of the goods.  *  *  *  There is a well-recognized distinction in such cases as these between a disaffirmance of the sale, with all its incidents, and a mere rescission of the credit upon which the sale was made.  *  *  *  That plaintiffs were willing to allow the contract to stand was apparent from their election to sue upon the contract, and not in tort; but 'whether they had also affirmed the credit upon which the sale was made was an independent question, upon which the plaintiffs were entitled to have the jury plainly and correctly instructed."

Upon the new trial the defendant was given the affirmative, and he testified that he purchased the goods in question from one of the plaintiffs' salesmen on the 6th day of August, 1896, and that he delivered to the plaintiffs, the day after the purchase, the notes, which did not become due until after the commencement of the action. These notes were, at the request of the defendant, produced by the plaintiffs, and marked in evidence.  He further testified that at the time of the sale the plaintiffs' salesman stated to the defendant that he would give the defendant as long a time as he wanted; that the defendant then asked for 6, 9, and 12 months, and this was agreed to, and the notes were delivered in pursuance of this agreement.  The defendant then rested, and one of the plaintiffs was called, and testified:  That at the time he made the sale to the defendant he was a subscriber to Bradstreet's Commercial Agency, and before he gave the credit to the defendant he sent to the agency, and received a statement that in reply to a request of the agency's representative, made on July 10, 1895, for a statement of his financial standing, the defendant submitted in writing, signed by him, a statement showing that he was the owner of an equity of $12,000 in real estate, with other personal property, making his total assets $43,500; liabilities for merchandise, $3,000,—and that in giving the credit to the defendant the witness relied upon that statement, and believed it to be true.  That he would not have given credit to the defendant if he had known that the statement was false in any respect.  That in September, 1896, one of the plaintiffs had an interview with the defendant, stating to the defendant that he had received a different report from the agency, by which it appeared that the defendant did not own the property mentioned in the statement, and the defendant said that that was so; that he did now own it; that it was a mistake; that it did not make any difference, as he was just as good without this property.  That sub-

sequent to this interview, on December 21, 1896, this action was commenced. The plaintiffs then offered evidence to explain the delay in bringing the action, which was objected to by the defendant and excluded by the court, to which the plaintiffs excepted. The plaintiff also called a reporter for Bradstreet's Commercial Agency, who produced a written statement signed by the defendant, which was in the custody of the agency, and which stated that the defendant owned real estate of the value of $28,000, subject to a mortgage of $16,000; that the witness had an interview with the defendant on the 31st day of August, 1896, at which the defendant stated that it was not true that he was the owner of the real estate specified in the statement; that the witness subsequently called upon the defendant, and showed him the original statement signed by the defendant; that the defendant then acknowledged that this statement was an error; said that his son had made it, and he was not aware that the real estate was included, and that he acknowledged his signature to it; that the witness then asked him whether the other items in the statement were correct, but the defendant declined to make any statement. The plaintiff then rested, and the defendant testified in rebuttal that the plaintiff came to his office on the 2d or 3d of September, and said that he had come to inquire of the defendant why the defendant's rating had been changed in Bradstreet's; that the defendant said that he had made a report to Bradstreet's a year before which had stated that he was the owner of real estate which he did not own and never had owned, and it was a mistake; that the defendant then went to the safe and took out the diamonds which the plaintiffs had sold him, and said, "If you are not satisfied with the sale you have made, why, here are your diamonds, if you will bring all my notes back;" that in reply the plaintiff said, "It is all right. I have known you these many years, and I don't want the diamonds;" that the plaintiff then went away. Nothing further was done until the commencement of this action on the 21st day of the following December.

At the close of the testimony the defendant made a motion to dismiss the complaint, which the court granted, upon the ground that the plaintiffs having found on September 2d or 3d what they regarded as evidence of some fraud practiced upon them, and heard the explanation of his debtor, and neither expressed a dissent at that time, nor disapproved the transaction, their conduct on that occasion indicated an absolute acquiescence and satisfaction with what was said by their debtor, and having waited for 3 months and 19 days without having had any interview or correspondence with their debtor, and then commenced this suit, that this was an affirmance of the contract, notwithstanding the alleged deceit which was practiced upon them. To the dismissal of the complaint the plaintiff excepted, and the question for review is whether, upon this testimony, there was any question to go to the jury.

This conclusion of the trial court would seem to be in conflict with the view of the court of appeals upon the former appeal. An examination of the discussion in the prevailing and dissenting opinions would seem to indicate that the court considered that there was a question of fact for the jury upon the evidence as to whether

the result of the transaction between the plaintiff and the defendant at the interview in September was an affirmance of the agreement to give credit upon the sale, as well as an affirmance of the sale itself. The court called attention to the distinction between the sale and the agreement for credit, and to the right of the plaintiff either to disaffirm the sale, and proceed in replevin to recover their goods, or waive the tort, and proceed in assumpsit for the purchase price, and that in such case there was a well-recognized distinction between a disaffirmance of the sale, with its incidents, and a rescission of the credit given when the sale was made. It is not claimed that the plaintiff disaffirmed the sale. On the contrary, he ratified the sale, by bringing this action to recover for the purchase price. To entitle him to maintain the action, he was obliged to disaffirm the credit; and, when the defendant pleaded as a defense that he was granted a credit which had not expired, to meet that defense the plaintiffs had the right to prove the fraud, and that they were entitled to affirm the sale, but to disaffirm the credit; and, if that was so, their right of action at once accrued upon electing to disaffirm the credit. No act or declaration of the plaintiffs is testified to which was a distinct affirmance of the credit, or a waiver of their right to disaffirm the credit upon the discovery of the fraud; but the court below seem to have applied the general rule that where a vendor was entitled to disaffirm either a sale or a credit, as having been induced by fraud, he must act promptly upon the discovery of the fraud, or he will be deemed to have waived his right to rescind. This rule is well settled, but we think in this case that the question was one not for the court, but for the jury. Upon this question the plaintiffs sought to excuse the delay, but that testimony was objected to by the defendant and excluded by the court. A mere delay of something over three months after a discovery of fraud before the attempted rescission is not conclusive evidence of a waiver of the right, or an election not to rescind. If such delay was in itself evidence of an election to affirm the credit, the plaintiffs had the right to show facts which would excuse that delay; and, if the evidence was sufficient to show a sufficient excuse, the question would then be for the jury.

On the 2d or 3d of September the plaintiffs were informed that a statement that had been made and signed by the defendant, and upon which they had relied in extending to the defendant the credit that he asked, was false in a material particular. One of the plaintiffs went to the defendant and asked for an explanation. The defendant admitted that the statement was false, but stated that he had signed the statement without reading it, and that it was a mistake. If we assume that the plaintiffs were then required to elect whether or not they would rescind the sale and demand back their property, or were bound to make such an election within a reasonable time (Hallahan v. Webber, 7 App. Div. 122, 40 N. Y. Supp. 103), were they bound at that time to elect as to whether they would rescind the agreement for credit, and was their failure then to elect to rescind such an agreement a waiver of their right subsequently to rescind? I do not understand that this is the rule, and it seems

to be inconsistent with the decision of the court of appeals upon the former appeal, when the judgment for the defendant was reversed, and the case sent back for a new trial. If upon this evidence the defendant was entitled to a dismissal of the complaint, the court would not have reversed the judgment for the defendant and ordered a new trial, which could result in nothing but a dismissal of the complaint. We think, therefore, that the court considered that the question in this case was for the jury.

It would follow that there was error in the court's taking this question from the jury, and for that reason the judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur, except PATTERSON, J., who dissents.